UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA GUFFY, on behalf of ) <br> RODNEY GUFFY, deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> the Social Security Administration, ) <br> ) <br> Defendant. ) | No. 1:11-cv-00752-SEB-DKL |

**ENTRY**

This case is an appeal from a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Rodney Guffy disability insurance benefits ("DIB") under the Social Security Act ("the Act"). For the reasons set forth herein, the Commissioner's decision must be REMANDED with an award of benefits from the alleged disability onset date until the date of Mr. Guffy's death.

**I.   Background**

**A. Procedural History**

With a complex procedural history and limited factual scope of review, the instant case is distinguishable from most DIB appeals that come before this court. Mr. Guffy initially applied for both DIB and Supplemental Security Income ("SSI") on May 6, 2001, alleging a disability onset date of January 18, 1999 due to symptoms associated with diabetes, organ damage, and short-term memory loss. R. at 119-21, 127, 240-41,

1

243-50. He later amended the onset date to January 23, 2001. *Id.* at 12. Mr. Guffy's claim was denied initially and upon reconsideration by the Social Security Administration ("SSA"). *Id.* at 94-95, 242-50. He had his first hearing on January 9, 2003 in front of Administrative Law Judge ("ALJ") Albert Velasquez. *Id.* at 23-57. The ALJ issued an unfavorable decision on January 29, 2003, *id.* at 12-19; the SSA Appeals Council ("AC") denied his subsequent appeal, rendering that denial the Commissioner's final decision. *Id.* at 5-7. Thereafter, Mr. Guffy sought judicial review of the Commissioner's decision in this court.

On June 15, 2004, the Court remanded Mr. Guffy's case to the Commissioner after finding that the ALJ had merely restated state agency findings that Mr. Guffy was "moderately limited in his ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions and perform at a consistent pace, set realistic goals or make plans independently of others." *Guffy v. Barnhart*, No. 1:03-cv-760-SEB-VSS (quoting R. at 15). Specifically, the ALJ had not stated whether he had accepted or rejected those findings, nor did he state what weight he had given them. *Id.* The Court continued, stating that, in light of testimony by the vocational expert ("VE") testimony that accepting the state agency limitations would completely erode Mr. Guffy's job market, R. at 55, if the ALJ had "accepted the [s]tate [a]gency's determination as stated above, he should have found Guffy disabled." *Guffy*, No. 1:03-cv-760-SEB-VSS.

In January 2005, the ALJ conducted a second hearing and, once again in June, denied Mr. Guffy's claim. R. at 521-27, 588-612. Mr. Guffy appealed his claim to the

2

AC, which assumed jurisdiction of the action on March 31, 2007 and remanded the case to a different ALJ for failure to comply with this court's order. The AC justified its decision by noting that, although the ALJ had explained his interpretation of the state agency's findings, he still had not indicated the weight he afforded those findings. *Id.* at 532-33. On June 4, 2008, Mr. Guffy had a third hearing in front of ALJ Peter Americanos, *id.* at 613-60, who issued an unfavorable opinion on January 29, 2009. The new ALJ found that Mr. Guffy could perform his past relevant work and that significant jobs in the national economy existed for him. Accordingly, ALJ Americanos concluded that Mr. Guffy was not disabled. R. at 260-73.

Mr. Guffy again appealed the denial of his claim to the AC. On June 27, 2010, while the AC was reviewing his case, regrettably, Mr. Guffy died. His daughter, Melissa Guffy, took up the appeal on her father's behalf. Compl. ¶¶ 10-11. Although Mr. Guffy's claim for DIB survived his death, his claim for SSI did not. Pl.'s Br. at 1 (citing 20 C.F.R. §§ 404.503(b), 416.542(b)). On April 7, 2011, the AC denied Mr. Guffy's appeal, R. at 1-5, and on June 2, 2011, Ms. Guffy appealed. This court has jurisdiction to hear Ms. Guffy's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B. Facts**

Most of the facts are undisputed. Mr. Guffy was forty-seven years old at the time of ALJ Velasquez's initial decision; he had a high school education and past relevant work as a truck driver. R. at 12. For Step One of the typical sequential evaluative process, ALJ Velasquez determined that Mr. Guffy had engaged in no substantial gainful activity between his alleged disability onset date and the date of decision. *Id.* at 13, 17.

3

At Step Two, he found that Mr. Guffy suffered from the following severe impairments: (1) Type II diabetes; (2) depression; (3) cognitive disorder; (4) anxiety; (5) hypertension; and (6) headaches. *Id.* at 17. At Step Three, he determined that Mr. Guffy did not meet or equal a listed impairment, *id.* at 13, 17, and that his residual functional capacity ("RFC") rendered him capable of performing physical exertional and non-exertional requirements of medium level work, as long as the work involved simple, repetitive tasks requiring no mathematics or reading. *Id.* at 18. At Step Four, the ALJ found that Mr. Guffy could not perform his past relevant work. *Id.*

However, it is at Step Five that the discrepancy emerges that is at the heart of this case. During Mr. Guffy's first hearing, the VE testified that a claimant without the emotional limitations laid out by the state agency, *id.* at 502, could work as a cashier and that there were many jobs of that sort in the national economy. *Id.* at 51. On cross-examination, the VE testified that the claimant's limitations would result in zero jobs being available. *Id.* at 55. During the third hearing, ALJ Americanos gave persuasive weight to the state agency report, *id.* at 264, 273, and included a restriction of simple, repetitive work in his RFC assessment and hypothetical posed to the VE. *Id.* at 651. The VE repeated his view that Mr. Guffy could engage in work as a cashier[1] and perform other light exertional work. Further, he estimated that more than 25,000 positions of this nature were available to Mr. Guffy, which number increased to 31,000, if he could perform medium exertional work and overhead work with his right arm. *Id.* at 651-52.

---

[1] The inconsistency between the VE's testimony at the first hearing and the third hearing regarding whether Mr. Guffy had past relevant work as a cashier requires no resolution by us in order to rule on the instant matter.

4

Most significantly, the VE stated there would be no erosion of jobs given state agency limitations, *id.* at 653-54, or if Mr. Guffy had no more than superficial interaction with the general public, co-workers, and supervisors. *Id.* at 654-55.

## II. Discussion

### A. Scope of Remand Order

A single issue is before the Court on appeal: whether the ALJ complied with our June 15, 2004 order on remand. The parties disagree on the scope of the Court's remand order and the extent to which the "law of the case doctrine" applies. The law of the case doctrine states that once an "appellate court[2] expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1060, 1061 (7th Cir. 1991). On remand from the district court, the SSA must "conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart," such as the introduction of new evidence. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). Both parties agree that the application of this doctrine is properly analyzed with reference to the district court's mandate. Pl.'s Br. at 8 (citing *Key*, 925 F.2d at 1061); *see also Angevine v. Sullivan*, 881 F.2d 519, 522 (7th Cir. 1989); Def.'s Br. at 11. "While a mandate is controlling as to matters within its compass, [however,] on the remand a lower court is free as to other issues." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982).

---

[2] A district court acts as an appellate tribunal on administrative appeals, such as appeals resulting from a final decision of the SSA. 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Guffy alleges that the only issues for ALJs Velasquez and Americanos to reconsider on remand were whether the state agency's findings regarding his moderate limitations had been accepted or rejected. He further states that if the ALJs accepted those findings, a finding of disability was mandatory. In other words, Mr. Guffy contends that the ALJs had no authority to reverse the Court's findings by reweighing the number of jobs available in the national economy. Pl.'s Br. at 9. The Commissioner, meanwhile, argues that Mr. Guffy's reading of the purpose of the Court's remand order is too narrow. Instead, the Court's opinion simply expressed concern that the ALJ had not adequately articulated how the state agency's findings affected his evaluation of Mr. Guffy's claim. Def.'s Br. at 11. Given the Court's focus on the ALJ's inadequate explanation of his decision, it is not reasonable, says the Commissioner, to conclude that, but for the ALJ's failure to state whether he accepted or rejected the agency findings, the VE testimony would have corroborated a finding of disability. *Id.* at 12.

A resolution of the instant dispute turns on what portion of the Court's June 15, 2004 order defines the scope of the required remand. Mr. Guffy interprets the statement "had the ALJ accepted the [s]tate [a]gency's determination as stated above, he should have found Guffy disabled," R. at 502, to mean that the only issue on remand was whether the ALJ had accepted or rejected the state agency findings. In Mr. Guffy's view, everything else had been resolved by the Court in its June 15, 2004 order. Therefore, he argues that, assuming the ALJ had accepted these findings, a finding of disability necessarily follows. Pl.'s Br. at 6-7. Moreover, he contends, his case was remanded on the second occasion due to the ALJ's failure to explain what weight he afforded the state

6

agency's findings and whether he accepted or rejected them. Pl.'s Rep. Br. at 2. Mr. Guffy concludes that when ALJ Americanos treated the state agency's findings as persuasive authority, his inquiry should have ended there, and a finding of disability should have been entered.

The Commissioner responds by emphasizing another portion of the judgment in which the Court stated that, "[w]ithout articulating [the ALJ's] reasoning . . . [there was] no way to determine whether the evidence of record supports a more restricted RFC finding." R. at 502. Thus, the issue on remand included whether, even if the ALJ had accepted and given significant weight to the state agency's findings, there still existed significant jobs in the national economy for Mr. Guffy. The Commissioner notes that Mr. Guffy has not challenged the testimony of the VE from the third hearing, during which the VE opined that Mr. Guffy could work even with his limitations. Def.'s Br. at 12 (citing R. at 271-73). This testimony, according to the Commissioner, was new evidence that provided compelling grounds to depart from a previous ruling. *Id.* (citing *Wilder*, 153 F.3d at 803). Because the ALJ "provided a detailed explanation as to how the moderate limitations [we]re consistent with the performance of simple, repetitive work," *id.* at 12-13 (citing R. at 254), the Commissioner maintains that he properly complied with the Court's remand order and that his finding of no disability should be upheld.

The final paragraph of our June 15, 2004 order resolves this seeming inconsistency. There, we stated in simple and clear terms that we were "required to remand the case to the ALJ for further consideration of the record and clearer articulation

of the ALJ's reasoning regarding the [s]tate [a]gency's findings." R. at 502. This ruling indicates a limited scope of remand. Nowhere is there a directive or authorization to the ALJ to consider new testimony or new record evidence; indeed, his only task was to accept or reject and assign proper weight to the [s]tate [a]gency's findings. To that end, it is instructive that, at the second hearing in front of ALJ Velasquez, a VE was present but asked no questions or otherwise participated. Pl.'s Rep. Br. at 2 (citing R. at 588, 590). This fact buttresses Mr. Guffy's theory that the ALJ was foreclosed from receiving evidence or reaching a revised Step Five determination in light of the state agency's findings. Given that the Court had ruled that "had the ALJ accepted the State Agency's determination as stated above, he should have found Guffy disabled," R. at 502, the ALJ's inquiry should have stopped after he had assigned proper weight to the findings, whereupon a finding of disability should have been entered.

## B. Disposition of the Case

Generally, when an administrative decision is erroneous and unsupported by substantial evidence, the appropriate action for the appellate tribunal is to remand the case to the agency for further factual finding. The purpose of such procedure is to ensure that the decision to award or deny benefits is made by the Commissioner, who is in the best position to make that determination. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). Mr. Guffy argues that because all major factual issues have been resolved, and because the record supports a finding of disability, the case should be remanded to the Commissioner only for the purpose of awarding him benefits. Pl.'s Br. at 14-15 (citing *Hickman v. Apfel*, 187 F.3d 683, 690 (7th Cir. 1999); *Micus v. Bowen*, 979 F.2d

602, 609 (7th Cir. 1992); *King v. Astrue*, No. 1:06-cv-0381-DFH-TAB, 2007 U.S. Dist. LEXIS 26052, at *18-19 (S.D. Ind. Feb. 26, 2007)). The Commissioner does not seek a further remand for additional factfinding.

In *Hickman*, the Seventh Circuit held that an ALJ's decision that the claimant did not meet or equal an Appendix 1 listing was not supported by substantial evidence and, in fact, the record indicated that the claimant did satisfy the listing. *Hickman*, 187 F.3d at 690. Thus, the court remanded the case to the Commissioner and directed an award of benefits. In our view, the instant case resembles *Hickman* in that the only issue to be resolved is whether the ALJ accepted or rejected the state agency's findings. Upon accepting those findings, the testimony by the VE that there were no jobs available compelled a finding of disability. *Id.* at 502. Consequently, we now remand this case to the Commissioner not for rehearing or further factfinding, but to make an award of benefits.

### C. Trial Work Period

Lastly, Mr. Guffy argues that the Commissioner should be estopped from arguing that his work from August 2003 to July 2004, *see* R. at 315-18 (described as a "trial work period" in Pl.'s Br. at 13), disqualified him from receiving DIB, because SSA had made no prior determination on that issue. Pl.'s Br. at 12-13. The Commissioner failed to address this issue in its reply brief, and this court therefore does not reach any conclusions with respect to Mr. Guffy's trial work period.

### III. Conclusion

The Court's June 15, 2004 entry dictated a very narrow remand requiring reconsideration as to whether the ALJ was accepting the state agency's findings regarding the claimant's moderate limitations, and, if so, what weight he attributed to the findings. When ALJ Americanos gave persuasive weight to the findings, he was required to accept the VE's testimony that there were no jobs available for Mr. Guffy to perform and to deem Mr. Guffy disabled. The Court finds today that Mr. Guffy was disabled. Accordingly, we remand this case to the Commissioner for an award of benefits. Judgment consistent with this entry shall now issue.

**IT IS SO ORDERED.**

Date: __09/17/2012

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

SSA (Court Use Only)
ch.il.ogc.sdindiana@ssa.gov

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

11